## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**PATRICIA L.,**

         **Plaintiff,**

                                    **Case No. 2:20-cv-6736**

    **v.**                            **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

         **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Patricia L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, and for Widow's Insurance Benefits, 42 U.S.C. §§ 402 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decisions.

## I.   PROCEDURAL HISTORY

Between July 2017, and May 2018, Plaintiff filed applications for disability insurance benefits, supplemental security income, and disabled widow's benefits, alleging that she has

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

been disabled since March 7, 2016. R. 15, 41, 119, 125−26, 217−29. The applications were denied initially and upon reconsideration. R. 15, 41, 127−31. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 134−35. Administrative Law Judge ("ALJ") Robert Schriver held a hearing on December 14, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 56−90. In substantially similar decisions dated February 6, 2019, and February 25, 2020,[2] the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 7, 2016, Plaintiff's alleged disability onset date, through the date of those decisions. R. 15−25, 41−51. Those decisions became the final decisions of the Acting Commissioner of Social Security when the Appeals Council declined review on April 1, 2020. R. 6−11 (addressing both ALJ decisions). Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On November 20, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On that same day, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[2] The Court agrees with the parties, *Plaintiff's Memorandum of Law*, ECF No. 18, p. 2 n.1, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, p. 2, that these decisions were the same except that the first decision, issued February 6, 2019, referred to only disabled widow's benefits, and the second decision, issued February 25, 2020, referred to disability insurance benefits and supplemental security income. *Compare* R. 15−25, *with* R. 40−51.

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

3

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining

whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4); *see also id.* at §§ 404.1520(a)(2) ("These rules apply to you if you file an

application for a period of disability or disability insurance benefits (or both) . . . . They also

apply if you file an application for widow's or widower's benefits based on disability for months

after December 1990."), 404.1505(a) ("We will use this definition of disability if you are

5

applying for a period of disability, or disability insurance benefits as a disabled worker, . . . or, with respect to disability benefits payable for months after December 1990, as a widow, widower, or surviving divorced spouse."); *Andrew V. v. Saul*, No. 2:19-CV-00392, 2020 WL 4572682, at *2 (E.D. Wash. Aug. 7, 2020) ("The definition of disability for disabled widower's benefits is the same as for the standard disability case and the five-step sequential evaluation process is applicable to disabled widower's benefits cases.") (citing 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(i)–(v)); *Mace v. Colvin*, No. 3:15CV1229, 2016 WL 6600004, at *1 (M.D. Pa. Nov. 8, 2016) ("The standard for demonstrating disability when seeking widow's benefits is the same as the general disability standard[.]") (citing 20 C.F.R. § 404.335(c)). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

6

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISIONS AND APPELLATE ISSUES

Plaintiff was 55 years old on her alleged disability onset date. R. 23, 50. The ALJ found that Plaintiff is the unmarried widow of a deceased insured worker who has attained the age of 50 and that Plaintiff met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act, 42 U.S.C. § 402(e). R. 44. For purposes of disability insurance benefits, Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. R. 17. For purposes of disabled widow's insurance benefits, the "prescribed period"[4] ended on September 30, 2020. R. 44.

---

[4] "To receive [disabled widow's benefits], Plaintiff must establish that she became disabled prior to … the date on which the prescribed period ended." *Randolph v. Comm'r of Soc. Sec.*, No. CV 2:19-846, 2020 WL 3619682, at *1 n.1 (W.D. Pa. July 1, 2020) (citing 20 C.F.R. § 404.335).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 7, 2016, the alleged disability onset date, and the dates of the administrative decisions, February 6, 2019, and February 25, 2020. R. 17, 44.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; and asthma. R. 18, 44. The ALJ also found that the following diagnosed impairments were not severe: hypothyroidism, high cholesterol, and high blood pressure. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19, 44–45.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of exertional work subject to various non-exertional limitations. R. 19–23, 45–49. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a medical assistant; sales assistant – jewelry; sales assistant – cosmetics; and exercise instructor. R. 23, 49–50.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 50,000 jobs as a mail clerk; approximately 300,000 jobs as a price marker; approximately 70,000 jobs as a router clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 23–24, 50–51. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 7, 2016, her alleged disability onset date, through the date of the administrative decisions. R. 24, 51.

---

"The prescribed period begins on the date of the wage earner's death. The period ends the earlier of: (1) the calendar month before the month the widow or widower attains age 60; or (2) the later of seven years after the worker's death, or seven years after the widow or widower was last entitled to survivor's benefits." *Id.* (citing 20 C.F.R. § 404.335).

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 21.

## IV.   RELEVANT MEDICAL EVIDENCE

### A.      James C.Y. Chou, M.D.

On December 5, 2018, James C.Y. Chou, M.D., Plaintiff's treating psychiatrist, completed a three-page, check-the-box, and fill-in-the-blank form entitled, "Mental Capacity Assessment." R. 487–89, 516–18 (duplicate). Dr. Chou diagnosed Plaintiff with major depressive disorder, recurrent, moderate (F33.1) and panic disorder without agoraphobia (F41.0). R. 487, 516. Dr. Chou assessed Plaintiff's ability to perform work-related activities on a day-to-day basis in a regular setting, indicating the degree of limitation resulting from only psychological factors, by rating Plaintiff's limitations on a continuum using the following terms: none,[5] mild,[6] moderate,[7]

---

[5] Where "none" is indicated, the claimant is "able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

[6] A limitation is "mild" when the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.*

[7] A limitation is "moderate" when the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

marked,[8] extreme,[9] and unknown.[10] *Id*. When assessing Plaintiff's degree of limitation in her ability to understand, remember, or apply information, Dr. Chou opined that Plaintiff had a "moderate" limitation in her ability to follow one-to two-step oral instructions; "marked" limitations in her abilities to recognize a mistake and correct it, or identify and solve problems, and to sequence multi-step activities; and an "extreme" limitation in her ability to use reason and judgment to make work-related decisions. *Id*. In support of these opinions, Dr. Chou explained: "Pt has repeated anxiety attacks, and it's almost impossible for her to make work-related decisions when she panics." *Id*. When assessing Plaintiff's degree of limitation in her ability to concentrate, persist, or maintain pace, Dr. Chou opined that Plaintiff had "moderate" limitations in her abilities to initiate and perform a task that she knows how to do and work close to or with others without interrupting or distracting them; "marked" limitations in her abilities to sustain an ordinary routine and regular attendance at work and work a full day without needing more than the allotted number or length of rest periods during the day; and "extreme" limitations in her abilities to work at an appropriate and consistent pace, or complete tasks in a timely manner and to ignore or avoid distractions while working. R. 488, 517. In support of these opinions, Dr. Chou explained that, "[b]ecause of pt's high anxiety, some days she cannot step outside her house." *Id*. When assessing Plaintiff's degree of limitations in her ability to adapt or manage herself, Dr. Chou found that Plaintiff had "moderate" limitations in her abilities to distinguish between acceptable and unacceptable work performance, set realistic goals, maintain personal

---

[8] A limitation is "marked" when the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*.
[9] A limitation is "extreme" when the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id*.
[10] A limitation is "unknown" when the individual completing the assessment is "[u]nable to assess limitations based on examination or review of medical records." *Id*.

hygiene and attire appropriate to a work setting, and be aware of normal hazards and take

appropriate precautions; and "marked" limitations in her abilities to adapt to changes, manage

psychologically based symptoms, and make plans independently of others. *Id.* Dr. Chou left

blank the question asking him to describe the medical/clinical findings that support this

assessment. *Id.* When assessing Plaintiff's degree of limitations in her ability to interact with

others, Dr. Chou found that Plaintiff had "moderate" limitations in her ability to cooperate with

others, or ask for help when needed, understand and respond to social cues, and respond to

requests, suggestions, criticism, correction and challenges; and "extreme" limitations in her

ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or

suspiciousness. R. 489, 518. In support of these findings, Dr. Chou explained that "Pt is hyper

sensitive to people's reactions to her." *Id.* Finally, Dr. Chou opined that Plaintiff could manage

benefits in her own best interest. *Id.*

### B.       Jim Li, D.O.

On December 8, 2018, Jim Li, D.O., Plaintiff's treating physician, completed a two-page,

check-the-box, and fill-in-the-blank form entitled, "Physical Assessment." R. 482–83, 520–21

(duplicate). Dr. Li diagnosed Plaintiff with "Mild Asthma, HTN [hypertension], Hyperthyroid,

hypercholesterol." R. 482, 520. Dr. Li opined that Plaintiff's symptoms associated with these

conditions were severe enough to frequently interfere with the attention and concentration

required to perform simple work-related tasks. *Id.* When asked to identify the side effects of any

medications that may impact Plaintiff's capacity for work, such as dizziness, drowsiness,

stomach upset, etc., Dr. Li responded that they were "unknown for psychiatry." *Id.* Dr. Li opined

that Plaintiff would not need to recline or lie down during an 8-hour workday in excess of the

typical 15-minute break in the morning, the 30–60 minute lunch, and the typical 15-minute break

11

in the afternoon. *Id*. According to Dr. Li, Plaintiff could walk one-half of a city block without rest or significant pain and sit for one hour and stand/walk for one hour in an eight-hour workday. *Id*. Dr. Li opined that Plaintiff could occasionally (less than one-third of the eight-hour workday) lift and carry less than ten pounds and could never lift and carry ten pounds or more. *Id*. Dr. Li also found that Plaintiff had limitations in performing repetitive reaching, handling, and fingering, finding that Plaintiff could grasp, turn, and twist objects with both hands 25% of the time during an eight-hour workday; use the fingers of both hands for fine manipulation 50% of the time during an eight-hour workday; and use her right arm for reaching 10% and left arm for reaching 20% of the time during an eight-hour workday. *Id*. Based on objective medical, clinical, and laboratory findings, Dr. Li stated, Plaintiff is likely to be absent from work once or twice a month as a result of her impairments or treatments. R. 483, 521. Dr. Li also indicated that Plaintiff's impairments (physical impairments plus any emotional impairments) were reasonably consistent with the symptoms and functional limitations described in this evaluation. *Id*.

## V.     DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination. *Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. Plaintiff specifically argues that the ALJ erred in discounting the opinions of James C.Y. Chou, M.D., Plaintiff's treating psychiatrist, and Jim Li, D.O., Plaintiff's treating physician. *Id*. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not

treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, "but can have no exposure to respiratory irritants; she can perform only simple tasks; make only simple work-related decisions; and can have only occasional contact with the general public." R. 19, 45. In making this determination, the ALJ detailed record evidence regarding Plaintiff's mental impairments, including, *inter alia*, Dr. Li's July 14, 2017, examination findings that described Plaintiff as neat and clean, without memory loss; Dr. Chou's August 2, 2017, examination at which Plaintiff reported that her life-time experience of anxiety and panic attacks had worsened in the last year, that she felt depressed on a daily basis, was suspicious about people following her, and was having difficulty sleeping; Dr. Chou's findings on mental status examination that Plaintiff's attention, concentration, memory, and general information were intact; Plaintiff's report on September 6, 2017l, to a social worker, Jui-En Shih, of anxiety that impaired her daily functioning, and a persistent depressive mood, with several recent events increasing these symptoms, but Plaintiff also reported to Ms. Shih that her

depressive mood had "cleared out" and that she had more energy to complete tasks; Ms. Shih's diagnoses of major depressive disorder, recurrent, moderate, and panic disorder without agoraphobia; Dr. Chou's January 31, 2018, characterization of Plaintiff's conditions as stable with current medication; Dr. Chou's October 3, 2018, comment that Plaintiff's anxiety and panic attacks were stable on medication; Plaintiff statement to Dr. Chou that she was trying to find a career in cosmetics; Dr. Chou's findings on examination that Plaintiff's symptoms of depression were depressed mood, decreased interests, decreased energy, appetite changes, hopelessness, impaired concentration and psychomotor retardation and that her symptoms of anxiety were palpitation, excessive worry, shortness of breath, and profuse sweating, but that Plaintiff's attention, concentration, memory, and general information were all intact and her affect was constricted, her mood was anxious, and her thought process was normal; Dr. Chou's diagnoses of major depressive disorder, recurrent, moderate, and panic disorder without agoraphobia; Plaintiff's October 11, 2018, report to Dr. Chou that her anxiety made it difficult to attend therapy sessions, that she has been dealing with depression for many years, and Dr. Chou's diagnoses of major depressive disorder, recurrent, moderate, and panic disorder without agoraphobia. R. 20–21, 47–48.

The ALJ also detailed record evidence regarding Plaintiff's physical impairments, including, *inter alia*, a normal physical examination on April 27, 2015; Plaintiff's complaint during a physical examination by Dr. Li on July 14, 2017, of occasional lower back pain and concern about possible Lyme disease following a tick bite; Dr. Li's findings of bilateral expiratory wheezes and fair to good air entry, tenderness at the lower back and decreased range of motion; Dr. Li's advice that Plaintiff's acute back pain would resolve within one to two weeks; Dr. Li's findings on July 24, 2017, of tenderness and decreased range of motion at both

shoulder joints, without significant swelling; Plaintiff's July 31, 2017, complaint to Dr. Li of leg swelling; Dr. Li's diagnoses of essential (primary) hypertension, localized edema, and hypothyroidism; an abnormal liver function test on August 14, 2017; Dr. Li's August 22, 2017, finding of no apparent hyper- or hypothyroid symptoms on current management; Dr. Li's August 24, 2017, diagnoses of other specified hypothyroidism, intermittent back pain and shoulder pain, worsening with bending and twisting, mild intermittent asthma, essential hypertension, and sting from a non-venomous insect; findings of blood pressure of 138/86, trace edema of both legs, tenderness at bilateral shoulder joints, tenderness at the low back, and bilateral air entry with expiratory wheezes; ibuprofen was used for pain; and an October 16, 2017, notation of no apparent hypothyroid symptoms on current management. R. 19–20, 46–47. The ALJ went on to summarize his findings supporting the RFC determination as follows:

> In summary, the medical record does not demonstrate that the claimant has any significant physical limitations. Her diagnosis of asthma requires continued medication and the need to avoid environmental irritants. The mental health record does demonstrate a chronic psychiatric condition, going back many years, and evident during the period when she was successfully working in spite of the problems she faced. It is evident that she has struggled with several recent personal setbacks that were emotionally troubling for her. However, with proper treatment and medication, her condition has been described as stable. She remains capable of meeting the mental demands of simple, unskilled work, with necessary limitations on public contact and decision making incorporated in the functional capacity established.

R. 23, 49. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this RFC determination, arguing that the ALJ erred when assessing the opinions of, *inter alios*, Dr. Chou, Plaintiff's treating psychiatrist. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 14–21; *Plaintiff's Reply Brief*, ECF No. 20, pp. 4–10.

15

After summarizing Dr. Chou's objective findings, treatment, and opinions, the ALJ found Dr.

Chou's opinions "not at all persuasive[,]" reasoning as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. This finding is made in light of the medical and mental health record, which does not provide objective evidence that would confirm the extent and severity of the conditions that the claimant has alleged. Although the claimant presented at the hearing as very emotional, the psychiatric record does not reflect the severity of depression and panic attacks that the claimant has alleged, and the nature of her treatment was not consistent with what would be expected in cases of marked or severe mental impairments.
>
> As noted above, the claimant's treating psychiatrist, Dr. Chou, has consistently found her to have mild to moderate levels of depression, and has provided treatment consistent with that (Exhibit 4F). Treatment records consistently note in mental status examinations that the claimant's memory, attention and concentration were intact, thought processes were normal, and she was without more severe symptoms of delusions, paranoia or hallucinations. When seen in 2017 by Ms. Shih, the therapist, and by Dr. Chou, the claimant's symptoms were characterized as mild, and the claimant was stable on her current medication. Therefore, Dr. Chou's later mental functional assessment responses, which showed multiple marked and severe impairments, are not all persuasive; they are not supported by his treatment notes, and are inconsistent with the record as a whole (Exhibits 4F and 6F).

R. 22, 48−49.

Plaintiff raises several challenges to this assessment. Plaintiff first contends that the ALJ

failed to properly discuss the relevant regulatory factors−supportability and consistency−when

discounting Dr. Chou's opinions, arguing that the ALJ's reasoning that Dr. Chou's opinions

"'were inconsistent with his own findings and the record as a whole'" is a "single, conclusory

sentence' . . . [that] fails to address conflicting evidence in the record.'" *Plaintiff's Memorandum

of Law*, ECF No. 18, p. 14 (quoting *Beerhalter v. Comm'r of Soc. Sec.*, No. C19-cv-17561, 2020

WL 5627015, at *7 (D.N.J. Aug. 18, 2020)). Plaintiff also argues that the ALJ mischaracterized

the evidence when he found that the mental status examinations revealed that Plaintiff's

conditions were stable. *Id.* at 14–16. "The ALJ's rationale for discounting the opinion of Dr. Chou[] based on 'stability' is simply incorrect." *Id.* at 17. Plaintiff specifically contends that, even when her conditions were characterized as "stable," she still exhibited symptoms despite her medication. *Id*. at 15–17. For the reasons that follow, the Court is not persuaded that this issue requires remand.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[11] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to

---

[11] As previously noted, Plaintiff's claims were filed between July 2017 and May 2018.

any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"), 416.927c(a) (same). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at §§ 404.1520c(a), 419.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017) (explaining that "supportability" is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."
20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration
of medical opinions and prior administrative medical findings" and articulate in the
"determination or decision how persuasive [he or she] find[s] all of the medical opinions and all
of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§
404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how he or she considered "the
supportability and consistency factors for a medical source's medical opinions or prior
administrative medical findings[,]" and may, but is not required to, explain how he or she
considered the other remaining factors. *id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ, after detailing the evidence relating to Plaintiff's mental impairments,
explained that Dr. Chou's assessment of Plaintiff's functional limitations "are not at all
persuasive; they are not supported by his treatment notes, and are inconsistent with the record as
a whole (Exhibits 4F and 6F)." R. 22, 49; *see also* 20 C.F.R. §§ 404.1520c(c)(1) (addressing the
supportability factor when considering medical opinions), 416.920c(c)(1) (same); 20 C.F.R. §
404.1520c(c)(2) (addressing the consistency factor when considering medical opinions),
416.916c(c)(2). As Plaintiff concedes, *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 14−15,
the ALJ supported this conclusion by noting that Plaintiff's "memory, attention and
concentration were intact, thought processes were normal, and she was without more severe
symptoms of delusions, paranoia or hallucinations"; that Plaintiff's symptoms in 2017 were
characterized as mild by Ms. Shih and Dr. Chou; and that Plaintiff "was stable on her current
medication." R. 22, 49. In other words, the ALJ specifically considered the supportability and
consistency factors and explained why Dr. Chou's treatment notes and other evidence in the

record rendered his opinions regarding Plaintiff's limitations as unpersuasive. *See id.*

Accordingly, based on this record, the Court cannot find that the ALJ failed to properly consider

the supportability and consistency of Dr. Chou's opinions in accordance with the governing

regulations. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2); *see also Serrano v.*

*Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("Here, the ALJ

explicitly considered the supportability and consistency factors relative to Mr. Martelo's opinion

by stating that the opinion was not well supported by and was inconsistent with the mental health

records. R. at 27. The ALJ had no further responsibility to cite to the record, which contained

over 1,000 pages."); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June

24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of

these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a

physician's opinion was not persuasive because "the limitations [the physician] espoused were

not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment

records, for instance, indicated a greater ability to walk, lift, and stand"); *Miller v. Kijakazi*, No.

CV 20-1148, 2021 WL 3852075, at *2–3 (W.D. Pa. Aug. 27, 2021) (stating that the ALJ "is

required to articulate how persuasive he/she finds the medical opinions" and, "[t]herefore, the

ALJ must explain how he/she considered the supportability and consistence of the an opinion"

and finding the "ALJ's manner of assessing said evidence is consistent with the new regulations

[under 20 C.F.R. §§ 404.1520c, 416.920c] governing this case" where the ALJ "directly

addressed the opinion and discussed why he found it to be inconsistent with and unsupported by

the evidence of record" where that physician's treatment notes "indicate the claimant has had

little treatment and no recommendations for inpatient treatment since the alleged onset date");

*Guillory v. Saul*, No. 1:19-CV-632, 2021 WL 1600283, at *6 (E.D. Tex. Apr. 23, 2021) (finding

that "the ALJ properly addressed the supportability factor [under 20 C.F.R. §§ 404.1520c and 416.920c] because the ALJ reasoned that Dr. Kanneganti's opinion was mostly unpersuasive because his opinion lacked support from objective medical evidence" and finding that "the ALJ properly addressed the consistency factor [under 20 C.F.R. §§ 404.1520c and 416.920c] because the ALJ noted that Dr. Kanneganti's opinion was not entirely consistent with Plaintiff's mental status exams" that "showed euthymic (normal) or neutral mood, intact memory, good concentration, no cognitive issues, and no difficulties in social functioning"); *Zajac v. Comm'r of Soc. Sec.*, No. 1:20-CV-135, 2021 WL 1169466, at *4 (W.D. Mich. Mar. 29, 2021) (finding that the ALJ properly analyzed an opinion under §§ 404.1520c(c)(1)−(2) and 416.920c(c)(1)−(2) where ALJ "articulated proper bases for finding the opinion unpersuasive, namely, consistently normal physical and mental examination findings, and she supported her reasons with citations to specific evidence in the record"); *Erin H. v. Saul*, No. 2:20-CV-00191-MKD, 2021 WL 1182366, at *9 (E.D. Wash. Mar. 29, 2021) (stating that the "ALJ's finding that Dr. Clark's opinion is inconsistent with the longitudinal record was a specific and legitimate reason, supported by substantial evidence to reject the opinion[,]" including that "the treatment records generally reflect normal psychological functioning, including normal mood, affect, memory, orientation, behavior, concentration, attention, fund of knowledge, speech, comprehension, insight, and judgment").[12]

---

[12] To the extent that Plaintiff relies on *Beerhalter* to argue that the ALJ's consideration of Dr. Chou's opinions in this case were insufficient, that reliance is unavailing. In *Beerhalter*, the Court found, *inter alia*, that the ALJ did not sufficiently address the consistency factor because "the single, conclusory sentence the ALJ provides fails to address conflicting evidence in the record" where the "ALJ's reliance on Dr. Davis' opinion is contradictory, given that it is subject to the same age issue that caused the ALJ to reject Dr. Slaughter's opinion" and "it is unclear how the VAMC record serves as a basis for rejecting Dr. Slaughter's opinion." *Beerhalter*, 2020 WL 5627015, at *7. Here, for the reasons already discussed and for the additional reasons discussed later in this decision, *Beerhalter* is factually inapposite.

Plaintiff also complains that the ALJ failed to note that Plaintiff's "stable" "baseline is still supportive of Dr. Chou's opinion[,]" arguing further that "'stability does not typically mean a patient is experiencing no problems, or is 'fine'" and that the ALJ erroneously interprets "stable" as meaning that Plaintiff's condition is "good." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 15. Plaintiff's arguments are not well taken. As a preliminary matter, as detailed above, the fact that Plaintiff was characterized as "stable" on medication was only one of several factors that the ALJ listed when explaining why he discounted Dr. Chou's more extreme opinions. R. 22, 48–49. Moreover, stable mental health examination findings can provide substantial evidence to support an ALJ's conclusions. *See Bucci for & on Behalf of Eland v. Saul*, No. CV 19-368, 2020 WL 709516, at *6 (W.D. Pa. Feb. 12, 2020) (affirming denial of benefits where "more than a scintilla of evidence supports the ALJ's conclusions[,]" including, *inter alia*, that "Plaintiff exhibited stable mental health when he complied with medication"); *cf. Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 121 (3d Cir. 2020) (finding ALJ "entitled to discount" a treating source's earlier assessment "where it was undermined by the more 'detailed, longitudinal picture" provided by his later medical assessments[,]" which revealed that the claimant was "consistently calm and cooperative upon exam, and her prognosis was 'good'" and objective evidence supported the ALJ's finding that mental impairments did not prevent the claimant from engaging in substantial gainful activity where "she was consistently noted to be calm and cooperative, reportedly got along with immediate family, friends, and neighbors, could shop in stores by herself, attended community events, and had consistently normal findings with her cognition, memory, speech, judgment and insight"). In addition, as Plaintiff apparently concedes, it was Dr. Chou, not the ALJ, who characterized Plaintiff as "stable." *See, e.g.*, R. 375 (reflecting Dr. Chou's note that Plaintiff was "stable" with current medication), 379 (same), 383

(same), 389 (same), 395 (same), 399 (same), 403 (same), 408 (same), 413 (same), 416 (same), 421 (same), 424 (same), 427 (same), 440 (same), 478 (same). To the extent that Plaintiff complains that she continued to experience symptoms despite medication, the ALJ specifically acknowledged those complaints in his decision. R. 20 (noting that Plaintiff complained to Dr. Chou of increased anxiety and panic attacks, daily depression, suspicious about people following her, and difficulty sleeping), 47 (same); 21 (noting that Plaintiff complained that she was unable to work because of, *inter alia*, severe and frequent panic attacks, emotional pain, depression, and anxiety), 48 (same). However, the ALJ went on to explain why he discounted Plaintiff's subjective statements as not entirely consistent with the objective medical record:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. This finding is made in light of the medical and mental health record, which does not provide objective evidence that would confirm the extent and severity of the conditions that the claimant has alleged. Although the claimant presented at the hearing as very emotional, the psychiatric record does not reflect the severity of depression and panic attacks that the claimant has alleged, and the nature of her treatment was not consistent with what would be expected in cases of marked or severe mental impairments.

R. 22, 48−49. Notably, Plaintiff does not challenge this evaluation of her subjective complaints. *See generally Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec*., 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler,* 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec*. *Admin*., 131 F. App'x 877, 880

(3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff next contends that the ALJ's finding that Plaintiff did not exhibit symptoms such as delusions, paranoia, or hallucinations is irrelevant where Plaintiff "does not have to be institutionalized or incapable of thinking for herself to be worthy of Federal benefits." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 17 (citation omitted). Plaintiff specifically argues that Dr. Chou "did not base any of his findings on hallucinations or delusions, so it is medically irrelevant to this opinion." *Id*. at 18. Plaintiff also contends that "[a] normal thought process is also irrelevant, as it simply measures a 'patient's form of thinking and to characterize how a patient's ideas are expressed during an office visit.' Being able to form coherent thoughts and relate them at a normal pace is not determinative." *Id*. (quoting American Family Physician, Mental Status Examination in Primary Care, available at https://www.aafp.org/afp/2009/1015/p809.html, last visited March 16, 2021).

Plaintiff's arguments are not well taken. As this court and other courts in this circuit have found, normal findings upon mental status examination devoid of hallucinations, delusions, or paranoia can provide substantial support for an ALJ's evaluation of a medical opinion and RFC determination. *See Brady v. Kijakazi*, No. 1:20-CV-00852, 2021 WL 5179140, at *5 (M.D. Pa. Nov. 8, 2021) (finding that "substantial evidence supports the ALJ's evaluation of Dr. Berger's opinion" of assigning no weight to that opinion where the ALJ, *inter alia*, pointed to the mental

24

status examinations "that recorded [the claimant's] cooperative attitude; good eye contact; relevant and coherent thought processes, intact language processing; intact associative thinking; alert and oriented behavior; intact immediate, recent, and remote memory skills; intact judgment; intact to lacking insight; and no evidence of delusions, hallucinations, obsessions, preoccupations, or somatic thoughts"); *Bonner v. Saul*, No. 1:19-CV-1370, 2020 WL 4041052, at *15 (M.D. Pa. July 17, 2020) (finding that substantial evidence supported the ALJ's RFC determination where "[w]ith regard to Bonner's mental health impairments, the ALJ explained that the medical record demonstrated relatively normal mental status findings, including that Bonner exhibited coherent thought processes, a normal attitude and affect, good insight, normal thought content, intact recent and remote memory, and intact cognitive functioning"); *Pohl v. Berryhill*, No. 3:18-CV-11675, 2019 WL 3886974, at *7 (D.N.J. Aug. 19, 2019) (finding that the ALJ's weighing of a medical opinion "is also well supported by substantial medical evidence in the record[,]" including that the claimant's "mental health examinations were unremarkable and she routinely denied ever experiencing delusions, hallucinations, or suicidal thoughts"); *Miranda v. Berryhill*, No. CV 18-694, 2018 WL 4038111, at *5 (E.D. Pa. Aug. 23, 2018) ("ALJ Timm's decision to give partial weight to Dr. Mullins' diagnosis of 'anxiety/depression' is supported by the record because he concluded it is based on Ms. Miranda's subjective complaints rather than Dr. Mullins' examination where Ms. Miranda appeared oriented, appropriately dressed, and had good eye contact with no evidence of hallucinations, delusions, impaired judgment, or significant memory impairment.").

Plaintiff goes on to argue that the ALJ mischaracterized the record when finding that Plaintiff did not have symptoms of paranoia, pointing to evidence in the record that Dr. Chou noted Plaintiff's repeated complaints that she was suspicious that people were following her.

25

*Plaintiff's Memorandum of Law*, ECF No. 18, pp. 17–18 (citations omitted). Plaintiff contends

that Dr. Chou also noted Plaintiff's panic attacks, the existence of which Plaintiff argues is

supported by the treatment of Dr. Chou and Ms. Shih for such attacks. *Id.* (citing R. 397, 407).

The Court is not persuaded that this issue requires remand. As a preliminary matter, the ALJ's

statement that the treatment records reflected findings from mental status examinations that did

not include symptoms of paranoia is not a mischaracterization of the record to the extent that Dr.

Chou did not observe such symptoms when examining Plaintiff. *See Alvarez v. Comm'r of the

Soc. Sec. Admin.*, No. CIV. 10-890, 2011 WL 2600712, at *9 (D.N.J. June 28, 2011) (finding

that the ALJ "did not mischaracterize Dr. Lazarus's report" when stating that "there was no

evidence of delusions, hallucinations, or paranoia" where Dr. Lazarus stated that Alvarez told

him about delusions, hallucinations, or paranoia, but found that Alvarez's "'thought processes

were coherent and goal directed'" and that there was no evidence of delusions, hallucinations, or

paranoia "in the evaluation setting itself'" and finding that the ALJ was observing that Dr.

Lazarus's evaluation yielded no evidence of these symptoms. "Whether Alvarez's testimony as

to the existence of these symptoms is credible is another matter, which the ALJ separately

considered"). Moreover, the ALJ specifically considered Plaintiff's complaints reported to Dr.

Chou that she was suspicious about people following her, but the ALJ discounted those

subjective complaints for the reasons previously explained and Plaintiff did not challenge those

findings. R. 20–22, 47–49; *see also Hatton,* 131 F. App'x at 879 ("[A] medical source does not

transform the claimant's subjective complaints into objective findings simply by recording them

in his narrative report[.]"); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he

mere memorialization of a claimant's subjective statements in a medical report does not elevate

those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*.,

No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Although Plaintiff also points to evidence that she was treated for panic attacks, it is not immediately clear why this evidence establishes that the ALJ mischaracterized the evidence when stating that Plaintiff's treatment records revealed that "she was without more severe symptoms of delusions, paranoia or hallucinations." R. 22, 49. Indeed, the ALJ specifically noted that Plaintiff was treated for panic attacks, R. 21, 47, but he again explained why the alleged severity of such attacks was not supported by the evidence. R. 21, 22, 48–49. Based on this record, the ALJ's alleged mischaracterization of the record does not require remand.

Plaintiff further argues that the ALJ erred when finding that "because Dr. Chou characterized Plaintiff's depression as 'moderately severe' that this is equivalent to a finding that only 'moderate' work limitations would result." *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 19–20 (citing R. 19); *see also Plaintiff's Reply Brief*, ECF No. 20, p. 8. Plaintiff's arguments are not well taken. The Court notes that these arguments are apparently based on the ALJ's findings at step three of the sequential evaluation that Plaintiff's impairments neither met nor medically equaled a listed impairment because she suffered only moderate limitations in the areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and only a mild limitation in the area of adapting or managing herself. *See Plaintiff's Memorandum of Law*, ECF No. 18, p. 19 (citing R. 19); R. 18–19 (reflecting the ALJ's step three analysis and noting in that analysis that, *inter alia*, Dr. Chou has consistently diagnosed Plaintiff's condition as depressive disorder, recurrent, moderate). However, as the ALJ correctly explained, "[t]he limitations identified in the

27

'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 19, 45; *see also Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (explaining that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways" and, therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five"). Notably, Plaintiff has not challenged the ALJ's step three finding nor has she explained how the ALJ erred in concluding that Plaintiff does not meet or medically equal any specific listed impairment. *See generally Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. In any event, Dr. Chou's diagnosis of a moderate depressive disorder was not the only reason relied upon by the ALJ in reaching his findings at step three. R. 19, 45. For these reasons, Plaintiff has not persuaded this Court that the ALJ's reliance on Dr. Chou's diagnosis of moderate depressive disorder at step three requires different or additional functional limitations in the RFC or otherwise undermines the ALJ's evaluation of Dr. Chou's opinions at step four.

Plaintiff also challenges the ALJ's consideration of the opinions of Plaintiff's treating physician, Jim Li, D.O. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21 – 23; *Plaintiff's Reply Brief*, ECF No. 20, pp. 4–12. After summarizing Dr. Li's care, objective findings, and opinions, the ALJ found Dr. Li's opinions "not persuasive[,]" reasoning as follows:

> The claimant has also alleged limitations due to back pain and shoulder pain. As noted above, there is no diagnosis of any related disorder in the medical record. The claimant also alleged these conditions when she was seen by her treating physician, Dr. Lee [sic]. After several examinations, Dr. Li diagnosed localized edema, hypertension, and hypothyroidism. These were described as mild conditions, back pain was intermittent, on and off, and Dr. Li indicated that pain should resolve in one or two weeks (Exhibits 1F and 6F). According to Dr. Li, there were no apparent thyroid symptoms on current management, when the claimant was seen in October

2017 (Exhibit 2F).

When Dr. Li provided a functional capacity statement in December 2018, he again noted that the claimant's conditions were mild. However, he went on to state that the claimant's symptoms were severe enough to interfere with her attention and concentration on a frequent basis throughout the day, and that sitting, standing, walking, and lifting were limited to an extent that would prevent even sedentary work (Exhibits 6F and 10F). This opinion is not persuasive, since it is clearly contradicted Dr. Li's by own reports, and it is inconsistent with the record as a whole.

R. 21–22, 49.

Plaintiff challenges the ALJ's evaluation of Dr. Li's opinions. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 21–23. Plaintiff first contends that the ALJ mischaracterized Dr. Li's opinion when stating that Dr. Li noted in a December 2018 functional capacity statement "that the claimant's conditions were mild." *Id*. at 21 (quoting R. 23). Plaintiff argues that Dr. Li stated that only Plaintiff's asthma was mild, not that all of her medical conditions were mild. *Id.* (quoting R. 482 (listing diagnoses as "mild asthma, HTN, Hyperthyroid, hyper cholesterol")). Plaintiff therefore argues that the ALJ mischaracterized the medical evidence. *Id.* (citations omitted). The Court is not persuaded that this issue requires remand. As a preliminary matter, the Court agrees with the Acting Commissioner that the ALJ provided a reasonable interpretation of Dr. Li's opinion when reading the adjective "mild" as applying to all the following diagnoses, *i.e.*, asthma, hypertension, hyperthyroid, and hyper cholesterol. R. 482; *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, p. 17; *see also United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014) (explaining that the series qualifier canon of statutory construction "'provides that a modifier at the beginning or end of a series of terms modifies all the terms'") (quoting *United States v. Laraneta*, 700 F.3d 983, 989 (7th Cir. 2012)), *aff'd*, 577 U.S. 347 (2016). However, even if the ALJ erred in this interpretation, Plaintiff has not explained how this error is harmful; that is, he has not explained how the diagnoses of hypertension,

29

hyperthyroidism, and hyper cholesterol (as opposed to mild hypertension, mild hyperthyroidism, and mild hyper cholesterol) undermine the ALJ's assessment of Dr. Li's opinions or the RFC determination. *See generally Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20; *see also Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"). This is particularly true where the ALJ also noted, *inter alia*, that "[t]hese [diagnosed] conditions do not cause significant reductions in the claimant's residual functional capacity," R. 18, 44; Plaintiff's "thyroid condition was described as 'asymptomatic[,]'" *id.* (citing Exhibit 1F, page 19); "[t]here were no physical limitations related to the claimant's cholesterol or blood pressure problems[,]" *id.*; there "were no apparent hyper or hypothyroid symptoms on current management" in August 2017, R. 20, 46; a hypothyroidism follow up in October 2017, revealed "no apparent symptoms on current management[,]" R. 20, 22, 46, 49; intermittent back pain that should resolve in one to two weeks, R. 22, 49; "the medical record does not demonstrate that the claimant has any significant physical limitations[,]" R. 23, 49; Plaintiff's "diagnosis of asthma requires continued medication and the need to avoid environmental irritants[,]" *id.*, which the RFC accommodated, R. 19, 45. For these reasons, this issue does not require remand. *See Shinseki*, 556 U.S. at 409−10; *Foley*, 349 F. App'x at 808; *Rutherford*, 399 F.3d at 553.

Plaintiff next contends that, other than this purported mischaracterization, the ALJ simply noted that Dr. Li's opinion is contradicted by "the record as a whole[,]" which Plaintiff argues "is insufficient under either regulatory scheme." *Plaintiff's Memorandum of Law*, ECF No. 18, p. 21 (quoting R. 23); *see also Plaintiff's Reply Brief*, ECF No. 20, pp. 4–12 (arguing generally that the ALJ's reasoning in the decision is deficient and that the revised regulations require more explanation of the supportability and consistency factors). This Court disagrees. As set forth above, the ALJ specifically explained that Dr. Li's opinion was not persuasive because "it is clearly contradicted by Dr. Li's own reports, and it is inconsistent with the record as a whole." R. 23, 49. A fair reading of the administrative decision establishes that the ALJ found that Dr. Li's extreme limitations were not persuasive because they were not supported by or consistent with Dr. Li's own reports as reflected in the mostly unremarkable physical findings detailed by the ALJ. Accordingly, based on this record, the Court cannot find that the ALJ failed to properly consider the supportability and consistency of Dr. Li's opinions in accordance with the governing regulations. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2); *see also Serrano*, 2021 WL 4477137, at *3–4; *Debevits*, 2021 WL 2590140, at *4; *Miller*, 2021 WL 3852075, at *2–3; *Zajac*, 2021 WL 1169466, at *4.

Finally, Plaintiff complains that the RFC determination is made "out of whole-cloth without any medical support" because the ALJ discounted the only medical opinions of record. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 14, 24; *Plaintiff's Reply Brief*, ECF No. 20, p. 10. This Court disagrees. As previously noted, however, it is the ALJ–not treating or examining physicians—who makes the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. Moreover, as detailed above, the ALJ relied on specific objective medical findings by Dr. Chou and Dr. Li when crafting the RFC.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration and evaluation of the opinions of Dr. Chou and Dr. Li.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decisions.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  November 17, 2021                          _____*s/Norah McCann King*_____
                                                        NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE